## CÓRDOVA *v.* EL BANCO ESPAÑOL DE PUERTO RICO.

APELACIÓN procedente de la Corte de Distrito de San

Juan.

No. 14.   Resuelto en Junio 5, 1905.

OBLIGACIONES.—CONTRATOS.—FORMA DE LOS MISMOS.—Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse á tenor de los mismos, cualquiera que sea la forma en que se hubieren celebrado.

MANDATARIO.—MANDANTES.—El mandatario que no falta á instrucción alguna concreta, ni á·obligación expresamente impuesta por el mandato, y, antes bien, se ajusta á los términos de este, no puede ser responsable de los actos del mandante, ni puede incurrir, por virtud de los mismos, en culpa, indemnización ó mora.

OBLIGACIONES.—SUCESOS IMPREVISTOS Ó INEVITABLES.—En el cumplimiento de las obligaciones, y á falta de pacto ó disposición legal en contrario, las partes no son responsables de aquellos sucesos que no hubieran podido preveerse, ó que previstos, fueran inevitables.

ID.—MORA.—INDEMNIZACIÓN.—INTERÉS LEGAL.—Cuando la obligación consista en el pago de una cantidad de dinero, y el deudor incurriere en mora, la indemnización se traducirá en el pago del interés legal, á falta de pacto en contrario.

COSTAS.—Las costas deben imponerse á la parte cuyas pretensiones fueren totalmente desestimadas.

### EXPOSICIÓN DEL CASO.

Visto este juicio declarativo sobre devolución de fianza seguido entre partes de la una Doña Isabel Córdova y Stuart, viuda de Don Primo Cosgaya y Villegas, propietaria, vecina de Arecibo, dirigida y representada ante esta Corte Suprema por el Licenciado D. José E. Benedicto, y de la otra el Banco de Puerto Rico con residencia en esta Capital, dirigido y representado por el Letrado D. Antonio Sarmiento; cuyo juicio pende ante Nos á virtud del recurso de apelación interpuesto por la parte demandante, Doña Isabel Córdova, contra la sentencia que por mayoría de votos dictó la Corte de Distrito de San Juan, con el voto particular del Juez discordante que copiados literalmente dicen así:

"*Sentencia*:—En la Ciudad de San Juan de Puerto Rico, á treinta de Noviembre de mil novecientos tres.—Vistos en juicio oral y

público los presentes autos declarativos seguidos entre partes: de la
una, como demandante, Doña Isabel Córdova Stuart viuda de Cos-
gaya, propietaria y vecina de Arecibo, dirigida y representada por el
Licenciado Don Elpidio de los Santos y Laguardia, primeramente, y
en el acto del juicio oral por el Abogado Don José E. Benedicto,
contra el Banco Español de Puerto Rico, con domicilio en San
Juan, dirigido y representado por el Letrado Don Antonio Sar-
miento, sobre devolución de la fianza que prestara Don Primo Cos-
gaya y Villegas para desempeñar el cargo de Recaudador de con-
tribuciones de Arecibo, intereses legales de dicha suma y costas.

1. *Resultando*:—que Doña Isabel Córdova Stuart, viuda de Don
Primo Cosgaya y Villegas, formuló su demanda acompañando el
auto dictado por el Tribunal de Distrito de Arecibo en 6 de Sep-
tiembre de 1901 declarándola heredera ab-intestado de su esposo; la
Gaceta de esta Isla de 28 de Mayo de 1898 que contiene la Cir-
cular de la Secretaría de Hacienda para que los encargados de la
recaudación no extremaran el procedimiento de apremio; el acta de
entrega de recaudación de contribuciones extendida en 10 de Octubre
de 1898 en la oficina de contribuciones del Banco Español de
esta Ciudad, presentando la lista cobratoria por territorial ascen-
dente á quince mil cuatrocientos cincuenta pesos sesenta y tres
centavos, de los que aparecen ingresados en la Administración local
de Arecibo once mil cuatrocientos setenta y seis pesos setenta y cinco
centavos y pendiente de cobro tres mil novecientos setenta y tres
pesos ochenta y ocho centavos, según recibos unidos á sus matrices;
siendo la lista de contribución por Industria y Comercio novecientos
veinte y cuatro pesos sesenta y tres centavos, entregando para cu-
brirla ochocientos cincuenta y dos pesos treinta y siete centavos en
recibo que enumera el inventario de que antes se hizo mérito, que-
dando la diferencia garantizada por los fallidos al tercer trimestre
y bajas del cuarto remitidos al Centro de Hacienda y aprobadas ob-
servándose una diferencia de trece pesos treinta centavos entre el
resultado general de la cuenta de contribuciones y los recibos que en-
trega la que queda á favor de la recaudación para cubrir los recibos
del primero y segundo trimestres pendientes de cobro, quedando com-
probadas estas operaciones de la entrega con la certificación del
débito correspondiente que aparece en los Libros de la Aduana de
Arecibo, oficio número 123 de cinco del citado Octubre, en el que se
hace constar no resulta reparo ó alcance contra Cosgaya por tener
liquidadas las contribuciones de los ejercicios anteriores á su cargo;
seis cartas dirigidas á Cosgaya por el Gobernador y Subgobernador

del Banco y Don Armando de las Alas, un oficio de Don Angel Sanz, el recibo que le expidiera Antonio Merroceau; el acuerdo del Concejo del Banco de 22 de Noviembre de 1898, que mientras no esté confirmada por la Superior Autoridad de Hacienda la manifestación de Don Angel Sanz no deben ser devueltas las fianzas; la contestación á Doña Isabel de que la reclamación para que se le devuelva la fianza debe hacerla al Banco y no á la Tesorería, que no reconoce otra personalidad que el Banco en la liquidación de sus cuentas con el Tesoro; y dos recibos otorgados por Roses y Ca. en 9 de Agosto de 1895 de entregas por cuenta del Banco Español.

2o. *Resultando:*—que el escrito lo basa en los hechos siguientes: haber sido nombrada heredera ab-intestato de su consorte, quien fué nombrado por el Banco recaudador de contribuciones de Arecibo y prestó fianza por mil setenta y dos pesos cuarenta y un centavos moneda oficial en 1895; que en 4 de Julio de 1898 el Sudgobernador del Banco acusó recibo á Cosgaya de su carta de primero de dicho mes de las cuentas de ingresos á la recaudación de igual mes, importando cuatrocientos sesenta y ocho pesos cuarenta y cuatro centavos, que se le abonaron con trece pesos veinte centavos, según recibo de Roses y Compañía: que el recaudador cumplió sus deberes con la aprobación del Banco, teniendo á su favor un pequeño resto por comisión de cobros; admitiendo el Banco la renuncia de Cosgaya del cargo designándole sustituto según carta de 16 de Agosto, 1898; certificando el Secretario del Banco se había dado cuenta con la insistencia del Recaudador á que se le devolviera la fianza, pues no podía ejercer la vía ejecutiva para el cobro según la carta de Don Angel Sanz por haberse recibido ordenes superiores, oponiéndose el Banco á la devolución por lo que acudió á éste, presentó los documentos y antecedentes de la recaudación como aparece del acta, quedando comprobadas las operaciones de la entrega, haciéndose constar no resultaba reparo ni alcance alguno contra Cosgaya; agregando consta en la Gaceta la Circular ya mencionada y habiéndose dirigido al Tesorero éste le contestó lo que de la comunicación referida en el primer resultando consta que la suma de la fianza le debe ser devuelta con los intereses legales de la demora, por no tener que intervenir en la liquidación que el Banco pueda tener con el Tesoro Insular; siendo el derecho los artículos 609, 658, 661, 1098. 1106, 1108, 1156 y 1847 del Código Civil, y suplica se declare que Cosgaya no ha tenido relación jurídica por contrato directo con el Gobierno de la Isla; que el Banco Español contrató con el Gobierno la recaudación de contribuciones; que con el carácter de contratista con-

trató con Cosgaya para que le prestara sus servicios; que entregó á Roses y Compañía y estos al Banco mil ciento veinte y ocho pesos ochenta y cinco centavos mejicanos, equivalentes á mil setenta y dos pesos moneda oficial en aquella época; que hizo entrega formal y le-- gal de su cargo de Recaudador; que ha habido demora en la entre- ga de la fianza, debe serle devuelta con los intereses legales y con- denar al Banco á que en el término de tercero día le dé y pague los mil setenta y dos pesos cuarenta y un centavos moneda oficial en 1895, ó su equivalente hoy en oro americano, con los intereses al seis por ciento anual hasta el efectivo pago, con las costas.

3o. Resultando: que conferido traslado al demandado pidió se declare sin lugar la demanda, absolviéndolo con las costas al de- mandante, alegando los hechos siguientes: que el Banco y la In- tendencia concertaron un contrato para recaudar las contribuciones directas de la Isla por cuatro años que terminaban en 30 de Junio de 1898 y fué prorrogado por cuatro más; conteniendo el artículo 8o. del pliego de condiciones que el Banco nombraría agentes, con la aprobación de la Intendencia, para que en su nombre practicasen la cobranza, y en casos graves, el Banco, á petición de la Intenden- cia, acordaría la separación de los nombrados, siendo los Agentes con- siderados para todos los efectos de las leyes como Recaudadores del Estado y con el carácter de agentes de Administración pública; expresando el artículo 12 del pliego de condiciones constituían el cargo del Banco los recibos que la Hacienda le entregara para el cobro y las cantidades que percibiera por cuotas ocasionales y pa- tentes, y la data las cantidades que ingresara en el Tesoro y los recibos cuya devolución aceptara la Intendencia por bajas y fa- llidos; debiendo presentarse las cuentas de recaudación por tri- mestres naturales y dentro del siguiente á aquél á que correspon- dan, y del semestre de ampliación el Banco había de presentar la cuenta de cada presupuesto examinando los Centros ú Oficinas unas y otras y solventados por el Banco los reparos, se aprobarían en debida forma y en el plazo más breve posible; que nombrado Cos- gaya en Agosto de 1895 Recaudador en Arecibo desempeñó su cargo hasta Agosto de 1898 en que se le admitió la renuncia é hizo entrega de la recaudación de 1897 á 1898 en las oficinas del Banco en 10 de Octubre, entregando según acta de entrega recibos por territorial que valen $3,973.88 y por Industria y omercio por $852.37 centavos. cuyas cantidades y las ingresadas en la local y el importe de fallidos del tercer trimestre y bajas del cuarto no aprobadas salda la recau- dación; estando saldo Cosgaya de los ejercicios anteriores por no

resultarle reparo ni alcance; pero el año de 1897-98 los recibos han sido abonados á reserva de las observaciones que puedan ocurrir; que el Banco ha gestionado la liquidación y últimamente la Tesorería ha producido una cuenta de reparos en la que se reserva resolver lo oportuno respecto á los recibos devueltos y no habiendo el Recaudador cumplido al rendir la cuenta ni aprobádose, no es posible determinar si existen ó no responsabilidades contra él; que no acompaña el actor certificación del acto conciliatorio; siendo el derecho los artículos 1596, 1718 del Código Civil, el art. 63 de la Orden General número 118, de 1899, y que la fianza como obligación secundaria subsiste mientras tenga realidad la obligación ó acto que garantiza.»

4o. *Resultando*: que abierto á prueba, de las del actor aparece: primero: el requerimiento al Subgobernador del Banco Español para exhibir las cartas dirigidas por el Recaudador Cosgaya desde Abril de 1898 hasta el 10 de Octubre, exhibiéndose y testimoniándose las de 2 de Mayo, 12 y 20 de Julio y 10 de Octubre referentes á no haberse arrancado ni un recibo desde que se declaró la guerra, y además, por pertenecer á los voluntarios, no tiene ni un momento para dedicarse á cobrar, ni se extrañe de la poca recaudación; que en ningún trimestre anterior se ha presentado la relación que refiere la instrucción y si presentar boletas de apremio y si se cree necesario, se le indique; que desde el primero de Julio preguntó á quien entregaba los recibos talonarios de ocasionales y patentes y no se le ha contestado; que el 19 el Administrador local le envió 19 mandatos ocasionales y patentes y los devolvió por no serle posible seguir con la recaudación; enviándole después dos libros talonarios que no ha abierto y desea saber qué hace con ellos habiendo remitido la relación de deudores que se le envió, expresando en la de diez de Octubre que ha hecho entrega de la recaudación de 1897-98 á su cargo y espera se le devuelva la fianza, testimoniándose una comunicación de primero de Julio de 1898 que dice remite el estado de la recaudación, así como el recibo de la comisión, manifestando que su estado de salud no le permite continuar desempeñando el cargo, reconociendo las cartas suscritas y por el demandante producidas, Don Antonio Sarmiento, Secretario del Banco y Don Cárlos M. Soler, Subgobernador del mismo, manifestando aquél como defensor del demandado que las suscritas por Don José M. López y Don Armando de las Alas no han sido negadas y las reconoce como auténticas, arrojando dichas cartas el recibo de Ro-

sas y Ca. del importe de la fianza, participándole á 6 de Agosto de 1895 el nombramiento de Recaudador de contribuciones de Arecibo, acuse de recibo de las cuentas del ingreso de la recaudación del mes según comunicación de primero de Julio de 1898 montante á $468.44, encargándole active el cobro y secunde los propósitos de la Hacienda iniciando el apremio, participándole la admisión de la renuncia en 16 de Agosto de 1898 y nombrando para ese servicio á Don Antonio Marroceau, rogándole le haga entrega, formando inventario y extendiendo acta, que se ponga de acuerdo con el nuevo recaudador para la entrega, haciendo la entrega, ófreciendo· corresponderle con la devolución de la fianza tan luego llegue á su poder el acta de entrega que se someterá á la aprobación necesaria; que es necesaria la entrega al nuevo recaudador para no retardar la cobranza por no haber éste recibido en 13 de Septiembre de 1898 los documentos, confirmando la del 23 de dicho mes la del 13 citado; que para la devolución de la fianza se espera la aprobación por el Tesorero de las cuentas de cada una de las recaudaciones y el Banco quede libre de responsabilidad; y que el Banco no puede cancelar mientras la Tesorería no apruebe las cuentas de Arecibo que le han sido presentadas.

5o. *Resultando*: de las pruebas del demandado, que en escritura otorgada ante el Notario Don Mauricio Guerra en dos de Julio de 1898 por el Secretario de Hacienda con el Banco Español encargándose éste de la recaudación de las contribuciones territorial y de industria y comercio de esta Isla durante cuatro años que terminarían el 30 de Junio de 1898, prorrogada hasta igual fecha de 1902, dispone el artículo 8o. que el Banco nombraría Agentes ó delegados para que en su nombre practiquen la cobranza con arreglo á las disposiciones vigentes, necesitando los nombramientos la aprobación de la Intendencia, y en casos graves, á petición del Estado, acordará la separación de los nombrados, siendo éstos considerados como los actuales recaudadores y agentes de la administración, ordenando el 19 que las dependencias de Hacienda darán conocimiento al Banco de los ingresos que esos agentes realicen por recaudación, y la aprobación de las altas, bajas y fallidos se les comunicará, expresando el 23 que las cuentas se presentarán por trimestres y dentro del siguiente al que correspondan, deberán llevar el Vo. Bo. del Gobernador del Banco, debiendo entregarse la de los pueblos dentro del semestre de ampliación, presentando el Banco á la Intendencia la cuenta de cada presupuesto, y exami-

nadas por los Centros y solventados por el Banco los reparos, se aprobarán.

6o. *Resultando*: que ademas de la prueba del demandado, se unió la certificación del Tesorero de la cual resulta que de los antecedentes de la recaudación de contribuciones del Estado que tuvo á su cargo el Banco Español entregó en Tesorería recibos pendientes de cobro del ejercicio de 1897-98 procedentes de la recaudación de Arecibo ascendentes á $4.828.55, que en 20 de Marzo de 1901, examinadas las relaciones de recibos talonarios del año económico de 1897-98 y anteriores entregadas, se le remitía el resúmen á reserva de las (operaciones que pudiera) observaciones que pudieran ocurrir, y en 12 de Junio de 1902 una cuenta de las contribuciones pendientes de cobro hasta dicho año económico, expresándole la ascendencia sin perjuicio de lo que se resuelva, no habiéndosele abonado definitivamente al Banco los recibos de la recaudación de Arecibo ni sido aprobadas las cuentas de dicha Ciudad relativas á los recibos pendientes de cobro.

7o. *Resultando*: que tramitado el juicio en la forma que la ley ordena informaron los abogados de las partes sosteniendo sus respectivas pretensiones, y en su día se votó sentencia por mayoría.

Siendo ponente el Sr. Juez Presidente Don Juan Morera Martínez.

1o. *Considerando*: que no habiéndosele abonado definitivamente al Banco los recibos de recaudación de Arecibo ni aprobádose las cuentas de dicha Ciudad relativas á los recibos pendientes de cobro, no es posible acceder á las pretensiones que la demanda contiene en sus diversos extremos, en especial en la devolución de la fianza con los intereses por la demora porque la obligación y responsabilidades del recaudador no han quedado extinguidas, ni el Banco puede reclamar dicha obligación y responsabilidades hasta que aparezca la cantidad líquida porque debe responderle el recaudador ó quedar aprobada dicha fianza.

2o. *Considerando*: que siendo la fianza obligación secundaria subsista mientras tenga realidad la obligación ó acto que se garantiza.

3o. *Considerando*: que debiéndose desestimar la demanda por esas consideraciones, procede condenar en costas á la demandante.

*Fallamos*: que debemos declarar y declaramos sin lugar la demanda á que este juicio se refiere y absolvemos de ella al Banco Español de Puerto de Rico, con las costas á Da. Isabel Córdoba Stuart viuda de Cosgaya.

Así por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos.—Juan Morera Martínez.—Con voto particular, Frank H. Richmond.—José Tous Soto."

*Voto particular de Juez Asociado Frank H. Richmond.*—Aceptando los Resultandos, y

1o. *Considerando*: que el contrato de depósito que hizo Primo Cosgaya con el Banco no tenía nada que ver con el contrato entre la Hacienda y el Banco, pues el Recaudador puso en depósito su dinero como garantía para el fiel cumplimiento con el Banco por parte de él de su deber de cobrar las contribuciones, devolviendo ó el dinero cobrado ó según el sistema entonces vigente, los recibos no entregados á los contribuyentes pagándolos, y que el contrato subsidiario de fianza terminó con la extinción y cumplimiento del contrato principal entre Cosgaya y el Banco con la entrega de su cargo á satisfacción del Banco á su sucesor, sin hacer reparos ó reclamación alguna.

2o. *Considerando*: que si existiera responsabilidad por haber faltado tn prontitud á proceder á la cobranza de los morosos por la vía de apremio, la prueba demuestra que eso fué por orden de su superior, lo que constituye una excusa perfecta y legal, y también constituyó una perfecta excusa legal para el incumplimiento, si existiera, el estado actual de guerra del país, con suspensión consiguiente de todas las operaciones civiles.

3o. *Considerando*: que la fianza depositada en dinero por el recaudador no puede en ningún sentido justo ó equitativo considerarse como una fianza ó garantía para asegurar al Banco inmunidades por motivos de reparos ó objeciones interpuestas por la Hacienda Central á la cuenta de su administración; y que no es justo ni equitativo que el Banco, observando una actitud de inacción ó inercia en la liquidación de sus cuentas con la Hacienda, conserve en su poder dinero ajeno con el pretexto de que la cuenta no está liquidada.

4o. *Considerando*: que la cláusula octava de la escritura otorgada entre el Secretario de Hacienda y el Banco Español al decir que los Recaudadores se considerarán como los actuales recaudadores y agentes de la administración, no basta para subrogar al Banco en lugar de la Hacienda y sustituir á Cosgaya en lugar del Banco en la situación contratante de las partes y simplemente tenía el efec

de sujetar á los agentes nombrados por el Banco á toda responsabilidad criminal, bajo el Código Penal en que incurrieren los recaudadores públicos por malversación ó sustracción de los fondos cobrados por ellos, al mismo tiempo que revestirlos de las facultades y atribuciones de empleados públicos en el desempeño de sus deberes aun que nombrados por la iniciativa de una institución casi privada.

5o. *Considerando* : que la ley no les impone á los recaudadores la obligación de asegurar y garantizar el cobro de los recibos entregádosles, ni asumir el Banco en virtud de su contrato con la Hacienda tal responsabilidad y en efecto simplemente contrató el anticipo de una parte fija de las contribuciones antes del cobro, tomando para su seguridad los recibos, encargándose del cobro y recibiendo por eso un tanto por ciento por interés y comisión en recompensa de sus gestiones fiscales como bancario.

6o. *Considerando* : que, á pesar de haber transcurrido cinco años desde la rendición de la cuenta, no se ha demostrado que la Hacienda hubiera presentado ninguna reclamación contra la cuenta de las contribuciones recaudadas en Arecibo, aprobándolas por el contrario simplemente y sin perjuicio de lo que pudiera descubrirse después y resultando con claridad del acta de entrega de 10 de Octubre que el Sr. Cosgaya devolvió la lista cobratoria de las contribuciones por territorial montante á $15,450.63, que él había cobrado é ingresado en la Aduana local de Arecibo la suma de $11476.75, como se justificó devolviendo también recibos pendientes de cobro montantes á $3,973.88 y con respecto á la lista de contribuciones de industria y comercio presentó la lista de $924.63, devolviendo $852.37 en recibos, estando la diferencia de $52.26 cubierta con la equivalencia de los fallidos del tercer trimestre y las bajas del cuarto trimestre remitidos al Centro de Hacienda y no aprobados y que las cuentas de los ejercicios anteriores á su cargo habían sido liquidadas y aprobadas definitivamente, correspondiéndole al Banco formular y perseguir los reparos y reclamaciones que existían y dado el haber expirado el término de cinco años es bastante presumible con respecto al Banco que en justicia y equidad no existen reparos ni reclamación alguna y está prescrita cualquier acción que pueda tener el Banco para liquidar y cobrar los daños y perjuicios ocasionados en casos específicos con motivo de falta de celo imputable al Recaudador.

7. *Considerando* : para mayor abundamiento de razones, que la Ley

de la Asamblea Legislativa de 1903 para la condonación de todas las contribuciones atrasadas deja improbable el que se trate en el futuro de reclamar alguna responsabilidad en que pudiere haber incurrido la recaudación por falta de celo ó diligencia salvándose solamente, según el espíritu é interpretación justa y equitativa de tal ley, las responsabilidades por subversión de los fondos cobrados y no ingresados.

*Fallo*: que debo declarar y declaro con lugar la demanda presentada y debo condenar y condeno al Banco Español á pagar á Da. Isabel Córdova Stuart viuda de Cosgaya, la suma de mil setenta y dos pesos cuarenta y dos centavos moneda provincial, ó su equivalente de seiscientos treinta y siete dollars cuarenta y dos centavos, moneda americana, con los intereses al seis por ciento desde el 7 de Agosto de 1895 hasta la fecha del pago, y las costas del juicio.—Frank H. Richmond.''

*Resultando* que notificada la sentencia anterior á la actora la citada Da. Isabel Córdova, como heredera de su esposo D. Primo Cosgaya y Villegas, interpuso contra ella recurso de apelación que fué admitido y elevados los autos alegaron las partes por escrito y oralmente en el acto de la vista cuanto creyeron conducente á su derecho en pró y en contra de la sentencia recurrida.

Abogado del apelante: *Sr. Benedicto* (José E.)

Abogado del apelado: *Sr. Sarmiento.*

EL JUEZ ASOCIADO SR. FIGUERAS, después de exponer los hechos anteriores, emitió la Opinión del Tribunal.

*Aceptando* los fundamentos de hecho de la sentencia apelada, y

*Resultando* que entre el Banco Español, hoy de Puerto Rico, y Don Primo Cosgaya, mediaron entre otras cartas las siguientes:

''San Juan P. R. 19 de Agosto de 1898.—Sr. D. Primo Cosgaya. —Arecibo.—Muy Sr. nuestro: El nuevo Recaudador de esa villa nos dice con fecha de ayer, que le ha sido imposible llegar á un acuerdo con V. respecto á la entrega de libros y documentos, en

razón á exigir V. la simultánea devolución de la fianza que tiene constituída para responder del cargo renunciado.—Y muy á pesar nuestro sentimos no poder camplacerle, pues que para llegar á la devolución debe preceder la entrega, de la que conocerá la comisión correspondiente de este Banco, llamada también á acordar el reintegro de la fianza.—Entendemos que sólo una mala inteligencia ha debido producir la demora en la entrega de esa recaudación.—Y al reconocido buen criterio de V. apelamos para que, convenciéndose de ello nos auxilie hasta el último momento haciendo entrega de libros, documentos, etc., á fin de dejar expedita la acción del nuevo Recaudador.—Asegurando á V. de nuevo y ofreciéndole corresponder por nuestra parte con la devolución de la fianza tan luego llegue á nuestro poder el acta de entrega que someteremos á la aprobación necesaria.—De Ud. s. s. q. b. s. m.—firmado—Armando de la Hera.''

''San Juan P. R., Septiembre 23 de 1898.—Sr. Don Primo Cosgaya. —Muy Sr. nuestro: Confirmamos nuestra carta á V. del trece de Septiembre y de nuevo le rogamos efectúe la entrega de cuanto afecta á contribuciones al Sr. Morroceau, pues rescindido el contrato con la Hacienda pública, urge y es de interés para todos activar la recaudación y dejar liquidados los ejercicios anteriores. Como quiera que ese Sr. Administrador de la Aduana ha de hacerse cargo de lo perteneciente al año económico actual; pudiera de una vez terminar V. aquella entrega al Sr. *Cosgaya* (1) y dar cuenta con el resultado para la devolución de su fianza.—Por lo que respecta á las boletas de apremio no dudamos serán autorizadas por el Sr. Administrador de esa local, facilitando la entrega de V. al Señor Cosgaya.—(2).—De V. afcmo. S. S. Q. B. S. M.—Firmado.—El Subgobernador, Carlos María Soler.—rubricado.—Notas.—(1) (2).— Creemos que en vez del Sr. Cosgaya sea el Sr. Morroceau pues no cabe suponer el que Cosgaya se entregue á sí mismo lo que tenía que entregar al Sr. Morroceau.''

10. *Considerando* que la cuestión planteada en este litigio es si la devolución de la fianza prestada al Banco de Puerto Rico por Don Primo Cosgaya como recaudador de las contribuciones de Arecibo nombrado por dicho Banco, está subordinada á la aprobación de sus cuentas por el Tesoro Insular, ó si habiéndola rendido á dicho Banco, debe éste desde luego devolver la referida fianza

metálica á su viuda y heredera la demandante Da. Isabel Córdova y Stuart.

2o.  *Considerando* que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos cualquiera que sea la forma de su celebración, pero es preciso que en caso de controversia judicial cada parte pruebe, por los medios que el derecho reconoce, la acción y excepciones que respectivamente se aleguen en la demanda y en la contestación.

3o.  *Considerando* que no hay prueba alguna determinada y concreta, por medio de la cual pudiera obtenerse un perfecto conocimiento de todas y cada una de las obligaciones que alega el Banco que recayeron sobre el demandante al aceptar el cargo de mandatario, y antes al contrario, las dos cartas que se han insertado en el último Resultando demuestran que en el primer instante en que comenzaron las reclamaciones de dicho recaudador sólo existían vínculos jurídicos entre éste y la institución de crédito que le nombró, sin que se encuentre absolutamente nada por donde se llegue á la conclusión de que aquél se obligó á no reclamar la devolución de su fianza metálica hasta que se aprobasen sus cuentas por la extinguida Intendencia General de Hacienda pública y hoy por el Tesoro Insular.

4o.  *Considerando* que el mandatario que no falta á instrucción alguna concreta ni á obligación expresamente impuesta por el mandato, ántes bien, se ajusta á los términos de éste, demostrado así por los actos del mandante, no puede ser responsable de tales actos, ni, en consecuencia, incurre en culpa, indemnización y mora, y siendo esto así no es justo ni equitativo que después de cerca de siete años de constantes reclamaciones, todavía conti-

núe la fianza metálica garantizando el ejercicio de un cargo que terminó con la entrega, sin reparo alguno, de las cuentas que dicho cargo producía.

5o. *Considerando* que no es aventurado suponer que la tardanza en la aprobación de las cuentas de la recaudación de Arecibo por parte del Tesoro Insular, se debe al cambio de soberanía y á la radical transformación que se ha realizado en materia contributiva, pero ni consta que estuviese obligado antes el Recaudador y hoy su heredera á solicitar su previa aprobación, ni tiene personalidad para ello, y en todo caso nunca podría responder de aquellos sucesos que no hubieran podido preveerse, ó que previstos, fueran inevitables.

6o. *Considerando* que en este caso los perjuicios por la demora en la devolución de la cantidad depositada, se traducen en el pago del interés legal.

7o. *Considerando* que las costas deben imponerse á la parte demandada.

*Vistos* los artículos 1058, 1072, 1075, 1182 y 1183 del Código Civil Revisado, 333 del Código de Enjuiciamiento Civil y sentencia del Tribunal Supremo de España de 20 de Abril de 1894.

*Fallamos* que con revocación de la sentencia que en 30 de Noviembre de 1903 dictó la Corte del Distrito de San Juan debemos condenar y condenamos al Banco de Puerto Rico á que en el término de quinto día devuelva á Doña Isabel Córdova y Stuart viuda de Cosgaya, el equivalente en oro americano de la cantidad de mil setenta y dos pesos cuarenta y dos centavos de moneda provincial depositados como fianza en dicho Banco por Don Primo Cosgaya con más los intereses legales desde el día de la presenta-

ción de esta demanda, y condenamos también al Banco al pago de las costas; comuníquese con copia certificada á la Corte de San Juan para los efectos procedentes.

Jueces concurrentes: Sres. Hernández, MacLeary y Wolf.

Juez disidente: Sr. Quiñones.

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. QUIÑONES.

El Juez que suscribe siente infinitamente disentir de la respetable opinión de sus ilustrados compañeros, y formula su voto particular, en los términos siguientes:

Aceptando los fundamentos de hecho y de derecho de la sentencia apelada.

*Considerando*: que si bien con arreglo á las condiciones establecidas en el contrato celebrado entre el Banco Español de Puerto Rico y la Intendencia General de Hacienda en veinte y siete de Junio de mil ochocientos noventa y cuatro al hacerse cargo el primero de la recaudación de las contribuciones territorial é industrial y de comercio en todos los pueblos de la Isla, quedó autorizado el Banco para nombrar agentes ó delegados que practicaran la recaudación en su nombre y bajo su responsabilidad, esos agentes debían ser aprobados por la Intendencia General de Hacienda, la que se reservó el derecho de exigir su destitución en circunstancias graves, y cuando así lo exigieran los intereses del Estado, y una vez nombrados y aprobados por la Intendencia, serían considerados para todos los efectos legales, como los recaudadores que entonces existían y con el carácter de agentes de la Administración pública, y debían sugetarse en el cumplimiento de su cometido á las disposiciones legales vigentes en aquella fecha, y á las especiales que les concernían de las contenidas en el pliego de condiciones porque se regía el expresado contrato.

Considerando que debiendo someterse según las condiciones estipuladas en el mismo, al exámen y comprobación de los Administradores locales y Colectores de rentas respectivos, las cuentas de la recaudación que debían rendir los recaudadores por trimestres vencidos, con el Vo. Bo. del Gobernador del Banco sin perjuicio de la general que debía presentar éste, dentro del semestre de ampliación de cada presupuesto á la Intendencia General de Hacienda, para que unas y otras fueran examinadas por los Centros ú oficinas donde fueran presentadas, y solventados por el Banco los reparos que pudieran ofrecer, se aprobaron en debida forma, dentro del plazo más breve posible, es evidente que á las autoridades de Hacienda es á las que compete decidir en definitiva sobre la aprobación de esas cuentas y en su consecuencia sobre la aceptación de los recibos que pudieran devolver los recaudadores por bajas y fallidos en descargo de la responsabilidad del Banco, como lo confirma la cláusula 12 del contrato de referencia al establecerse en ella, que constituirían el cargo del Banco los recibos que la Hacienda le entregara para el cobro, y las cantidades que recibiera por cuotas ocasionales y patentes, y la data, las cantidades que ingresaran en las cajas del Tesoro y los recibos cuya devolución aceptara la Hacienda por bajas y fallidos y por lo tanto que mientras la aprobación de esas cuentas no se obtenga no puede entenderse terminada la responsabilidad del Banco para con la Hacienda, ni la de los recaudadores para con el Banco, pues como mandatarios que son de éste, deben indemnizarle de todos los daños y perjuicios que puedan sobrevenirle por el mal desempeño de su cometido.

*Considerando* que no estando aprobadas todavía las cuentas de la recaudación de contribuciones de Arecibo, correspondientes al ejercicio de 1897 á 98, que tuvo á su cargo Don Primo Cosgaya y Villegas, como lo acredita la

certificación emitida por el Tesorero de Puerto Rico y que obra al fólio 101 de estos autos, subsiste todavía vigente la responsabilidad del Recaudador Cosgaya para con el Banco y carece por lo tanto de acción la demandante, su viuda y heredera, para exigir de aquél la devolución de la fianza que le prestara, precisamente para garantirle las responsabilidades que pudiera exigirle la Hacienda por culpa del Recaudador.

*Considerando* que si bien en el acto de la entrega de la recaudación de las contribuciones de Arecibo que tenía á su cargo D. Primo Cosgaya y Villegas correspondientes al año económico de mil ochocientos noventa y siete á noventa y ocho, no se formuló cargo ni reparo alguno contra el Recaudador, no por eso puede entenderse aprobada por el Banco la cuenta presentada por aquél, pues aparte de que no era al Banco á quien incumbía aprobarla, en el acta de la entrega se limitó el Oficial encargado de recibirla á consignar su resultado, pero sin hacer sobre ella apreciaciones que no eran de su incumbencia, en descargo de la responsabilidad del Recaudador.

*Considerando* que si bien al aceptar Don Primo Cosgaya el mandato que le confiriera el Banco Español de Puerto Rico al hacerlo cargo de la recaudación de contribuciones en el Distrito de Arecibo, no se extendió entre él y el Banco documento alguno en el que se expresaran las obligaciones y derechos respectivos de ambas partes, es de presumirse atendida la naturaleza especial de dicho mandato y los actos de las partes anteriores y posteriores á su celebración, que debió verificarse en la común inteligencia de que debían someterse á las condiciones establecidas en el contrato celebrado entre la Intendencia y el Banco, máxime cuando habiendo ejercido Don Primo Cosgaya anteriormente el cargo de Recaudador de Contribuciones, es de presumirse que estuviera perfectamente enterado

de la manera y forma en que debió realizar la recaudación y de las responsabilidades que ésta le imponía.

Considerando que siendo responsable directamente el Banco para con la Intendencia General de Hacienda de todos los actos realizados por Cosgaya en la recaudación de las contribuciones es lógico deducir como consecuencia natural del contrato celebrado entre Cosgaya y el Banco, que mientras la responsabilidad de éste para con la Hacienda no se liquide definitivamente, debe estimarse subsistente la responsabilidad del Recaudador para con el Banco, con arreglo al artículo 1258 del antiguo Código Civil, concordante co nel 1225 del vigente, y según el cual "los contratos se perfeccionan por el mero consentimiento y desde entonces obligan no solo al cumlpimiento de lo expresamente pactado, sino también á todas las consecuencias que según su naturaleza sean conformes á la buena fé, al uso y á la ley."

*Considerando* que á estas conclusiones no se oponen las dos cartas transcritas en la sentencia y dirigidas en diez y nueve de Agosto y viente y tres de Setiembre de mil ochocientos noventa y ocho á Don Primo Cosgaya por Don Armando de la Herá y el Subgobernador del Banco Don Carlos María Soler, respectivamente invitándolo para que hiciera la entrega de la recaudación á su sucesor nombrado por el Banco bajo la promesa de devolvérsele la fianza, toda vez que esta oferta no podía entenderse de otro modo sino en el sentido de que se le devolvería su fianza siempre que de la entrega no resultara responsabilidad para el Banco, pero no habiendo sucedido así, puesto que en el acto de la entrega aparecen devueltos por el Recaudador recibos de la contribución territorial y de comercio por valor de más de cinco mil pesos, mientras la Hacienda, que es á quien compete decidir sobre el particular, no resuelva sobre la admisión de dichos recibos, es-

tá vigente la responsabilidad del Banco para con la Hacienda, y por consiguiente subsistente la del Recaudador para con el Banco, y en su consecuencia vigente también la fianza prestada por aquél á favor de éste para responderle de los daños y perjuicios que pudiera originarle con motivo de la recaudación de las contribuciones que puso á su cargo.

Considerando que las costas deben imponerse á la parte cuyas pretensiones sean totalmente desestimadas.

*Vistas* las disposiciones legales aplicables al caso y en especial los artículos 661, 1091, 1709, 1718, 1886 y 1871 del antíguo Código Civil, reproducidos por los artículos 669, 1058, 1611, 1620, 1767 y 1772 del vigente.

Fallamos que debemos confirmar y confirmamos la sentencia apelada con las costas á la parte apelante.